# EXHIBIT "A"

**SHERIFF'S ENTRY OF SERVICE**

**SHERIFF'S ENTRY OF SERVICE**

Civil Action No. 2014CV245871

Date Filed 5/02/14

| | |
|---|---|
| Superior Court ☑ | Magistrate Court ☐ |
| State Court ☐ | Probate Court ☐ |
| Juvenile Court ☐ | |

Georgia, _____Fulton_____ COUNTY

Attorney's Address

E-Adam Webb
1900 The Exchange SE, Suite 480
Atlanta, GA 30339

Name and Address of Party to be Served.

Peachtree Neurosurgery, P.C.
C/o Christopher Tomaras, MD
~~Atlanta, GA 5670 Peachtree Dunwoody Rd.~~
Suite 990
Atlanta, GA 30342

Arthur Latimer

_____ Plaintiff

VS.

Medtronic, Inc., et al.

_____ Defendant

_____ Garnishee

**SHERIFF'S ENTRY OF SERVICE**

FILED IN OFFICE

MAY 16 2014

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**PERSONAL**

I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS**

I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

☐ Delivered same into hands of _____ described as follows: age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION**

Served the defendant ~~Peachtree~~ Neurosurgery _____ a corporation ☑ by leaving a copy of the within action and summons with _____ in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

☐ Diligent search made and defendant Christopher Tomaras moved ☑ not to be found in the jurisdiction of this court.

This _____ day of ____May____, 20 _14_.

_____ DEPUTY

SHERIFF DOCKET_____ PAGE_____

WHITE-CLERK    CANARY-PLAINTIFF    PINK-DEFENDANT

SHERIFF'S ENTRY OF SERVICE

SHERIFF'S ENTRY OF SERVICE

| | | |
|---|---|---|
| Superior Court ☑ | Magistrate Court ☐ |
| State Court ☐ | Probate Court ☐ |
| Juvenile Court ☐ | |

Civil Action No. 2014(V)45 87)

Date Filed 5/02/14

Georgia, _____ Fulton _____ COUNTY

Attorney's Address

E. Adam Webb
1900 The Exchange SE, Suite 480
Atlanta, GA ~~30341~~ 30339

Arthur Latimer
_____
Plaintiff

VS.

Name and Address of Party to be Served.

Northside Hospital, Inc.
C/O Susan V. Sommers
980 Johnson Ferry Rd., Suite 70
Atlanta, GA 30342

Medtronic, Inc., et al.
_____
Defendant

_____
Garnishee

SHERIFF'S ENTRY OF SERVICE

FILED IN OFFICE
MAY 16 2014
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**PERSONAL**

I have this day served the defendant_____ personally with a copy
of the within action and summons.

I have this day served the defendant_____ by leaving a
copy of the action and summons at his most notorious place of abode in this County.

**NOTORIOUS**

☐ Delivered same into hands of_____ described as follows:
age, about _____ years; weight _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of
defendant.

**CORPORATION**

Served the defendant Northside Hospital, Inc. a corporation
☑ by leaving a copy of the within action and summons with X Karen ___ Webb
in charge of the office and place of doing business of said Corporation in the County.

**TACK & MAIL**

I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the
premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail,
First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed
thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST**

Diligent search made and defendant_____
not to be found in the jurisdiction of this court.

This 9 day of May, 2014.

_____
DEPUTY

SHERIFF DOCKET_____ PAGE_____

WHITE-CLERK   CANARY-PLAINTIFF   PINK-DEFENDANT

# General Civil Case Filing Information Form (Non-Domestic)

**Court**  
☑ **Superior**  
☐ **State**

**County** Fulton

**Docket #** 2014 CV 245871

**Date Filed** 05/02/2014  
MM-DD-YYYY

**Plaintiff(s)**  
Latimer, Arthur

| Last | First | Middle I. | Suffix | Prefix | | Maiden |
|------|-------|-----------|--------|--------|--|--------|

| Last | First | Middle I. | Suffix | Prefix | | Maiden |
|------|-------|-----------|--------|--------|--|--------|

| Last | First | Middle I. | Suffix | Prefix | | Maiden |
|------|-------|-----------|--------|--------|--|--------|

| Last | First | Middle I. | Suffix | Prefix | | Maiden |
|------|-------|-----------|--------|--------|--|--------|

**No. of Plaintiffs** 1

**Defendant(s)**  
Medtronic, Inc.

| Last | First | Middle I. | Suffix | Prefix | | Maiden |
|------|-------|-----------|--------|--------|--|--------|

Medtronic Sofamor Danek USA, Inc.

| Last | First | Middle I. | Suffix | Prefix | | Maiden |
|------|-------|-----------|--------|--------|--|--------|

Peachtree Neurosurgery, P.C.

| Last | First | Middle I. | Suffix | Prefix | | Maiden |
|------|-------|-----------|--------|--------|--|--------|

Northside Hospital, Inc.

| Last | First | Middle I. | Suffix | Prefix | | Maiden |
|------|-------|-----------|--------|--------|--|--------|

**No. of Defendants** 4

**Plaintiff/Petitioner's Attorney**   ☐ **Pro Se**

Webb, E. Adam

| Last | First | Middle I. | Suffix |
|------|-------|-----------|--------|

**Bar #** 743910

FILED IN OFFICE

MAY - 2 2014

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

### Check Primary Type (Check only ONE)

☐ Contract/Account  
☐ Wills/Estate  
☐ Real Property  
☐ Dispossessory/Distress  
☐ Personal Property  
☐ Equity  
☐ Habeas Corpus  
☐ Appeals, Reviews  
☐ Post Judgment Garnishment, Attachment, or Other Relief  
☐ Non-Domestic Contempt  
☑ Tort (If tort, fill in right column)  
☐ Other General Civil Specify _____

### If Tort is Case Type:
(Check no more than TWO)

☐ Auto Accident  
☐ Premises Liability  
☐ Medical Malpractice  
☐ Other Professional Negligence  
☑ Product Liability  
☐ Other Specify _____

**Are Punitive Damages Pleaded?** ☑ Yes ☐ No



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| ARTHUR LATIMER, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
| | ) FILE NO: ᘔOI4CV 24587 |
| MEDTRONIC, INC., MEDTRONIC SOFAMOR DANEK USA, INC., PEACHTREE NEUROSURGERY, P.C., and NORTHSIDE HOSPITAL, INC., | ) |
| Defendants. | ) **JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Arthur Latimer, by and through his attorneys of record, and files his Complaint for Damages. This pleading is based upon the current information and belief of Plaintiff who hereby alleges as follows:

### PARTIES

1.

Plaintiff Arthur Latimer (hereinafter "Mr. Latimer") is a resident of the State of Georgia.

2.

Defendant Medtronic, Inc. (hereinafter "Medtronic") is among the world's largest medical device companies. Medtronic is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Medtronic is licensed to do business in Georgia and can be served via its registered agent, Corporation Process Company, 2180 Satellite Boulevard, Suite 400, Duluth, Georgia 30097.

3.

Medtronic Sofamor Danek USA, Inc. ("Medtronic Sofamor" but also referred to hereinafter as "Medtronic" collectively with Medtronic, Inc.) is a wholly owned subsidiary of Medtronic and the lead business in Medtronic's spine division.   Medtronic Sofamor is a Tennessee corporation with its principal place of business in Memphis, Tennessee.  Medtronic Sofamor is licensed to do business in Georgia and can be served via its registered agent, Corporation Process Company, 2180 Satellite Blvd, Suite 400, Duluth, Georgia 30097.

4.

Defendant Peachtree Neurosurgery, P.C. (hereinafter "Peachtree Neurosurgery") is a Georgia professional corporation with its principal place of business in Atlanta, Georgia. Peachtree Neurosurgery can by served via its registered agent, Christopher Tomaras, M.D., 5670 Peachtree Dunwoody Road, Suite 990, Atlanta, Georgia 30342.

5.

Defendant Northside Hospital, Inc. ("Northside") is a Georgia corporation with its principal place of business in Atlanta, Georgia.  Northside can be served via its registered agent, Susan V. Sommers, 980 Johnson Ferry Road, Suite 70, Atlanta, Georgia 30342.

## JURISDICTION AND VENUE

6.

The court has personal jurisdiction over Peachtree Neurosurgery and Northside since they are both domestic corporations.

7.

This Court has personal jurisdiction over the Medtronic companies since they are corporations licensed to do business in Georgia.  See Allstate Ins. Co. v. Klein, 262 Ga. 599, 601

2

(1992) ("As a resident. . .[,] a foreign corporation may. . . be sued to the same extent as a domestic corporation").

8.

Venue is proper with respect to Peachtree Neurosurgery and Northside since both companies' registered agents and principal places of business are located in Fulton County. O.C.G.A. § 14-2-51(b)(1).

9.

Venue is proper with respect to the Medtronic companies because "the cause of action originated" in Fulton County since the product at issue in this suit was sold and utilized in Fulton County. O.C.G.A. § 14-2-510(b)(4).

FACTUAL ALLEGATIONS

10.

Medtronic's Infuse device is used in spinal fusion surgeries to foster fusion between the vertebrae without implanting a patient's own bone or cadaver bone between the vertebrae in the spine.   The Infuse device utilizes morphogenetic protein-2 ("rhBMP-2"), a substance that stimulates bone growth.  This substance is applied to a collagen sponge that is placed in the "LT-Cage," a thimble-sized metal cylinder that keeps the two vertebrae in place and provides a frame that contains and directs the development of new bone growth.  The FDA has only approved Infuse for spinal surgeries in which rhBMP-2 is inserted, via the LT-Cage, into the lumbar region through the abdomen.   Such operations are known as Anterior Lumbar Interbody Fusion ("ALIF") procedures.

3

11.

The utilization of Infuse for unapproved, or "off-label," procedures has been repeatedly linked to incidents of cancer, and specifically to incidents of prostate cancer. Nevertheless, Medtronic has notoriously ignored the law, as well as its own research, and aggressively marketed Infuse for off-label procedures while being fully aware of the attendant dangers. Mr. Latimer is another tragic victim of Medtronic's brazenly illegal and unethical behavior.

12.

During the Infuse approval process in 2002, FDA officials strongly cautioned Medtronic to guard against "off-label," uses of the product. Trials involving non-ALIF applications of Infuse had resulted in dangerous bone overgrowth, and rhBMP-2 was a new and potent substance that, if used incorrectly, could result in unforeseen complications. Further, federal law strictly prohibits Medtronic from promoting Infuse for off-label purposes, although doctors may legally use the device in unapproved ways so long as their patients provide informed consent.

13.

However, despite the FDA's warnings and strong federal prohibitions on the promotion off-label uses for medical devices, Medtronic has for years aggressively promoted off-label applications of Infuse. Medtronic has illegally promoted these unapproved uses directly through its salespeople, as well as indirectly by essentially bribing "opinion leaders" in the medical industry to disseminate misinformation about the device's safety. Through most of the last decade, Medtronic made close to a billion dollars annually from Infuse sales, with nearly 90% of such sales deriving from off-label uses of the product. Consequently, Medtronic has literally made billions of dollars due to this illegal mass misinformation campaign.

4

14.

Tragically, Medtronic's brazenly illegal, unethical behavior has resulted in considerable and unnecessary pain and suffering, as numerous patients, including Mr. Latimer, have been afflicted with medical complications, including prostate cancer, due to operations involving off-label applications of Infuse.

15.

Medtronic's off-label promotional campaign for Infuse and the ghastly attendant human costs have sparked a United States Senate investigation, extensive criticism from major medical journals, private litigation, and numerous other government investigations.

16.

In the ensuing investigations, numerous physicians testified under oath that Medtronic salespeople had overtly and directly promoted to them off-label applications of Infuse. Medtronic's incentive system, in fact, required its salespeople to aggressively market off-label uses for Infuse in order to keep their jobs.   Despite strict prohibitions on such off-label promotions, at the height of Infuse's popularity, between 85-90% of Medtronic's Infuse revenue derived from off-label uses of the product.   Nevertheless, Medtronic set sales quotas requiring Infuse sales to grow 20% year-over-year, a goal that would have been impossible without increased sales for off-market purposes.

17.

Medtronic also sponsored numerous meetings and conferences in which highly esteemed, and well-paid, physician "consultants" demonstrated off-label uses of Infuse to physicians while Medtronic sales representatives waited nearby.   The Medtronic salespeople proceeded to sell Infuse to interested doctors immediately after what amounted to sales-pitches for off-label uses

of the product.  Surgeons have also stated that Medtronic employees routinely provided guidance and assistance during operations involving off-label applications of Infuse.

18.

Even more disturbingly, Medtronic has been heavily involved in distorting the data used in allegedly impartial medical journal articles on the Infuse device's safety.

19.

In June 2011, United States Senators Max Baucus and Chuck Grassley of the Senate Finance Committee initiated an investigation into Medtronic's mis-marketing of the Infuse product.  The Committee later released a 2,315-page report that determined, *inter alia*, that Medtronic was involved in drafting, editing, and shaping the content of medical journal articles on Infuse authored by its own physician consultants.  These consultants received significant amounts of money through royalties and consulting fees from Medtronic.  However, the company's significant role in authoring or substantially editing these articles was not disclosed in the seemingly impartial published articles.  According to the Senate report, Medtronic paid a total of approximately $210 million to physician authors of Medtronic-sponsored studies from November 1996 through December 2010 for consulting, royalty, and other arrangements.  The report also identified an e-mail exchange showing a Medtronic employee recommending against publishing a complete list of adverse events possibly associated with Infuse in a 2005 *Journal of Bone and Joint Surgery* article.

20.

Also in June 2011, *The Spine Journal* published a special edition dedicated to addressing serious safety and ethical concerns related to the Infuse device.  According to this special edition, 13 peer-reviewed articles funded by Medtronic that dealt with the Infuse device failed to

6

accurately report numerous adverse events involving the device, including incidents of inflammatory reactions, adverse back and leg pain, sterility, and cancer.

21.

Dr. Eugene Carragee, who contributed to *The Spine Journal*'s June 2011 Infuse issue, went on to study the link between the rhBMP-2 substance and cancer and determined that rhBMP-2 is much more likely to lead to pancreatic, breast, and prostate cancer than Medtronic had represented to the public. Dr. Carragee analyzed data that Medtronic had provided to the FDA related to "Amplify," a product that was similar to Infuse but contained a higher concentration of rhBMP-2. The FDA did not approve Amplify, primarily due to links between the device's rhBMP-2 concentration and cancer. Dr. Carragee noted, however, that off-label applications of Infuse frequently utilize concentrations of rhBMP-2 as high or higher than were in Amplify.

22.

Further, it was determined that a medical paper published in 2009 discussing the clinical results of Amplify tests had failed to reveal a known, statistically significant link between Amplify's rhBMP-2 content and cancer. The doctors who wrote this paper had received millions of dollars from Medtronic. The paper stated that eight Amplify test subjects had developed cancer, while in reality a ninth patient was revealed to have had cancer after the paper was written but well before it was published.

23.

The presence of cancer in this ninth patient constituted a statistically significant link between Amplify's rhBMP-2 content and cancer. The paper's authors, however, did not correct their outdated data and falsely denied any such statistically significant link in the paper.

7

Tragically, the contents of this intentionally misleading paper were well publicized while more accurate data reviewed by the FDA during the Amplify approval process, which revealed the statistically significant connection, was not.

24.

In response to the mounting controversy over rhBMP-2, Medtronic agreed in 2011 to fund two studies covering the substance's risks and benefits overseen by Yale University. Both studies, which were released in 2013, found links between rhBMP-2 and cancer, with some data suggesting that rhBMP-2 may in fact double a patient's cancer risk. The studies further indicated that Infuse offered no substantive advantages over more conventional methods of spinal fusion.

25.

In September 2013, Stanford's School of Medicine published a study in *The Journal of Bone & Joint Surgery* presenting further evidence of rhBMP-2's linkage to incidents of cancer, including incidents of prostate cancer. Another 2013 study, published in the journal *Neurosurgery,* found links between rhBMP-2 and non-malignant tumors in the brain and nervous system.

26.

Studies suggest that rhBMP-2 might either cause cancer or accelerate the growth of existing cancer. During the approval process for Amplify, it was noted that malignances associated with rhBMP-2 were "highly morbid," with one official believing that "[t]his [morbidity] suggest[ed] the possibility of a synergistic effect of the device that could potentially accelerate pre-existing cancer growth."

8

## FACTUAL ALLEGATION SPECIFIC TO PLAINTIFF

### 27.

On May 8, 2012, Plaintiff Arthur Latimer underwent spinal fusion surgery for his C5 and C6 cervical vertebrae. Although this surgery was not an ALIF procedure, his physician nevertheless utilized Infuse for the operation. Northside and Peachtree Neurosurgery furnished the Infuse device for use in this operation.

### 28.

For several months following his surgery, Mr. Latimer did not experience any ill effects related to the procedure. One benefit of Mr. Latimer's spinal fusion surgery was that it enabled him to once again enjoy intercourse with his wife, which had been difficult prior to his surgery due to pain stemming from his spinal issues. After several months, however, Mr. Latimer began experiencing intense pain in his groin area during intercourse. Mr. Latimer sought medical attention and learned that he had developed prostate cancer. The cancer was very aggressive, spread to other parts of his body, and has reached Stage 4 status.

### 29.

Given the heavy correlation between off-label Infuse applications and incidents of cancer, including incidents of prostrate cancer, it is evident that Medtronic's Infuse product either caused Mr. Latimer's cancer directly or rapidly accelerated its growth.

### 30.

Further, regardless of whether the Infuse device caused Mr. Latimer's cancer directly or accelerated its growth, Mr. Latimer would never have consented to its use in his cervical spinal fusion surgery had he been made aware of the product's profound, well-documented unsuitability for off-label purposes. Additionally, Mr. Latimer's doctor would never have

recommended the Infuse device to begin with had the full dangers of doing so not been intentionally obscured by Defendants.

<u>CLAIMS FOR RELIEF</u>

**COUNT I**
(Violation of Georgia's Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.* – Against All Defendants)

31.

Plaintiff incorporates by reference the allegations in Paragraphs 1-30 above as if set forth verbatim herein.

32.

Georgia's Fair Business Practices Act of 1975, O.C.G.A. § 10-1-390, *et seq.*, prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions." O.C.G.A. § 10-1-393(a). The Act, further, proscribes "[r]epresenting that goods . . . have . . . uses[ or] benefits . . . that they do not have." O.C.G.A. § 10-1-393(b)(5).

33.

Medtronic, Northside, and Peachtree Neurosurgery violated O.C.G.A. § 10-1-393(a) by selling and promoting Infuse for cervical spine operations, including Mr. Latimer's operation, while failing to disclose the potentially lethal consequences of this use for the product. Defendants further violated O.C.G.A. § 10-1-393(b)(5) by representing that Infuse could safely be used for cervical spine surgeries when the device, in fact, could potentially cause or accelerate the growth of a patient's cancer when used for this purpose.

34.

Further, Mr. Latimer sent notice letters along with settlement offers to Medtronic, Northside, and Peachtree Neurosurgery on February 26, 2014. The parties neither accepted Mr.

Latimer's settlement offers nor provided any counteroffers thereto. Consequently, Mr. Latimer is entitled to attorney's fees and expenses of litigation since Defendants failed to provide "a reasonable written offer of settlement within 30 days of" receiving these demand letters. O.C.G.A. § 10-1-399(d).

## COUNT II
(Violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. 10-1-370, *et seq.* – Against All Defendants)

### 35.

Plaintiff incorporates by reference the allegations in Paragraphs 1-30 above as if set forth verbatim herein.

### 36.

Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. 10-1-370, *et seq.*, proscribes "[r]epresent[ing] that goods . . . have . . . uses[ and] benefits . . . that they do not have." O.C.G.A. § 10-1-372(a)(5).

### 37.

Medtronic, Northside, and Peachtree Neurosurgery violated this provision of the Act by representing that the Infuse device could be safely used for cervical spine operations, such as Mr. Latimer's, when the device, in fact, was profoundly unsuited for that purpose. Indeed, Mr. Latimer's prostate cancer was either caused or rapidly accelerated by his use of the product.

### 38.

Further, since Defendants' misrepresentations respecting the safety of the Infuse device were clearly knowing and intentional, treble and punitive damages are warranted under the Act. See Paces Ferry Dodge, Inc. v. Thomas, 174 Ga. App. 642, 644 (1985) (stating that intentional

violations of the Uniform Deceptive Trade Practices Act justify findings of "treble damages and punitive damages").

## COUNT III
### (Strict liability – O.C.G.A. § 51-1-11(b)(1) – Against Medtronic)

39.

Plaintiff incorporates by reference the allegations in Paragraphs 1-30 above as if set forth verbatim herein.

40.

"Georgia law recognizes" strict liability against product manufacturers under O.C.G.A. § 51-1-11(b)(1) for "design defects . . . and marketing/packaging defects." Edwards v. Wisconsin Pharmacal Co., 2013 WL 6512050, at *3 (N.D. Ga. Dec. 13, 2013). In either case, "the inquiry is the same: whether a product was defective, and if so, whether the defect was the proximate cause of the plaintiff's injury.'" Id. (quoting SK Hand Tool Corp. v. Lowman, 223 Ga. App. 712 (1996)).

41.

Medtronic's design for Infuse is defective since the product was sold for a purpose, namely cervical spine surgeries, for which it was dangerously unfit. As a proximate cause of this design defect, Mr. Latimer's cancer either resulted or rapidly accelerated in growth.

42.

Medtronic's marketing of Infuse for cervical spine surgeries, further, is defective since the device is dangerously unfit for this use. As a proximate cause of this marketing defect, Mr. Latimer's cancer either resulted or rapidly accelerated in growth.

12

## COUNT IV
### (Negligence – Against All Defendants)

43.

Plaintiff incorporates by reference the allegations in Paragraphs 1-30 above as if set forth verbatim herein.

44.

"To state a negligence claim, the plaintiff must plead facts sufficient to establish (1) a legal duty of the defendant; (2) breach of that duty; (3) damages; and (4) a causal connection between the defendant's breach and the plaintiff's damages." Edwards, 2013 WL 6512050, at *2 (citing Berry v. Hamilton, 246 Ga. App. 608 (2000)).

45.

Medtronic, Northside, and Peachtree Neurosurgery had a duty to Mr. Latimer, as well as to all other consumers, not to sell Infuse for operations for which the device was dangerously unfit.  Defendants breached this duty when they sold Infuse for use in Mr. Latimer's cervical spine surgery, and as a consequence of that breach, Mr. Latimer's prostate cancer either began or rapidly accelerated in growth.

## COUNT V
### (Failure to warn – Against All Defendants)

46.

Plaintiff incorporates by reference the allegations in Paragraphs 1-30 above as if set forth verbatim herein.

47.

In Georgia, negligence and failure to warn "are distinct causes of action because they implicate separate duties that product manufactures owe their customers."  Edwards, 2013 WL

6512050, at *2.  However, "[t]he elements of these causes of action are otherwise the same."  Id.
Consequently, to state a claim for failure to warn, "the plaintiff must plead facts sufficient to
establish (1) a legal duty of the defendant; (2) breach of that duty; (3) damages; and (4) a causal
connection between the defendant's breach and the plaintiff's damages."  Id.

48.

Medtronic, Northside, and Peachtree Neurosurgery had a duty to warn Mr. Latimer of the
potentially lethal consequences of using Infuse in his cervical spine surgery.  The companies,
however, did not provide such a warning, and due to this breach of their duty, Mr. Latimer's
prostate cancer either began or rapidly accelerated in growth.

**COUNT VI**
(Breach of express warranty – Against All Defendants)

49.

Plaintiff incorporates by reference the allegations in Paragraphs 1-30 above as if set forth
verbatim herein.

50.

Medtronic, Northside, and Peachtree Neurosurgery expressly warranted that the Infuse
device could safely be used in cervical spine surgeries.  The product, however, is profoundly
unfit for such surgeries.

51.

As a result of the Defendants' breach of this express warranty respecting the Infuse
device, Mr. Latimer consented to use of the device in his surgery and, consequently, his cancer
either began or rapidly accelerated in growth.

14

**COUNT VII**
(Breach of implied warranty – Against All Defendants)

52.

Plaintiff incorporates by reference the allegations in Paragraphs 1-30 above as if set forth verbatim herein.

53.

When a product is sold for a particular purpose, the seller impliedly warrants that the product is fit for that purpose. Medtronic, Northside, and Peachtree Neurosurgery sold Mr. Latimer the Infuse device for use in his cervical spinal surgery even though the device was dangerously unfit for that purpose.

54.

As a result of the Defendants' breach of this implied warranty respecting the Infuse device, Mr. Latimer consented to use of the device in his surgery and, consequently, his cancer either began or rapidly accelerated in growth.

**COUNT VIII**
(Punitive damages – O.C.G.A. § 51-12-5.1(b) – Against All Defendants)

55.

Plaintiff incorporates by reference the allegations in Paragraphs 1-30 above as if set forth verbatim herein.

56.

Under Georgia law, an accusation that a company knows that a product "place[s] the general public at risk" and "willfully cho[oses] not to disclose these risks" states a claim for punitive damages under O.C.G.A. § 51-12-5.1(b). Edwards, 2013 WL 6512050, at *6.

57.

Medtronic, Northside, and Peachtree Neurosurgery are liable to Mr. Latimer for punitive

damages since they placed the general public at risk by marketing the Infuse device for cervical

spine surgeries and willfully chose not to disclose the risks of utilizing the device in these

surgeries.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Arthur Latimer prays:

(1)    For an award of such damages as are authorized by law;

(2)    For an award of all reasonable costs and attorneys' fees as incurred by Plaintiffs;

(3)    For a trial by jury of all matters; and

(4)    For such other and further relief as the Court may deem equitable and just.

DATED this 2nd day of May, 2014.

Respectfully submitted,

BY:    WEBB, KLASE & LEMOND, LLC

E. Adam Webb
  Georgia Bar No. 743910

1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
(770) 444-9594
(770) 217-9950 (fax)
Adam@WebbLLC.com

Attorney for Plaintiff



## IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
### SUMMONS

Arthur Latimer

)  Case
)  No.:_____

_____

**Plaintiff,**

vs.

Medtronic, Inc., et al.

_____

**Defendant**

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file with the Clerk of said Court and serve upon plaintiff's attorney, whose name and address is:

E. Adam Webb, Esq.
1900 The Exchange SE, Ste. 480, Atlanta, GA 30339

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service; unless service of this complaint is not filed within five (5) days of such service. Then time to answer shall not commence until such proof of service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This _____2nd_____ day of ___May___, 20 14

Honorable Cathelene "Tina" Robinson
Clerk of Superior Court
By _____
Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____, 20_____

_____
Deputy Sheriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used